DECISION AND JOURNAL ENTRY
{¶ 1} Appellants/Cross-Appellees, Steven J. Koerber ("Steven"), James Koerber, Sr., and James Koerber, Jr. (collectively, the "Koerbers"), appeal from the judgment of the Summit County Court of Common Pleas, which granted the summary judgment motions of Appellee/Cross-Appellant, Levey Gruhin, Attorneys at Law ("Levey Gruhin"), and Appellees, Harold Levey and Arthur Dombek. We affirm.
 I. {¶ 2} This appeal arose from a legal malpractice claim based upon underlying medical malpractice wrongful death claims filed by Steven on behalf of and as the administrator of the estate of his deceased brother, Robert Koerber ("Robert"), who died on January 27, 1997.
 {¶ 3} Steven retained the law firm of Levey Gruhin, a general partnership, to litigate the underlying medical malpractice and wrongful death claims, evidenced by a contingency fee agreement entered into by these parties on March 31, 1997. On this date, Steven met with Mr. Levey, a partner in the firm who was in charge of all personal injury cases for the firm, and who handled the Koerber file on behalf of Levey Gruhin. Mr. Dombek had an employment contract with Levey Gruhin at that time as the firm litigator, and served as trial counsel on the Koerber case. On February 11, 1999, Mr. Levey filed a complaint for medical malpractice and wrongful death against the physicians and hospital allegedly involved.
 {¶ 4} The Levey Gruhin partnership dissolved in December 1999, and Michael Gruhin ("Gruhin"), the second named partner of the former firm, formed a new law firm named Gruhin Gruhin on January 1, 2000. Thereafter, Steven executed a new contingency fee agreement with Gruhin Gruhin.
 {¶ 5} Thereafter, the physicians filed motions for summary judgment, asserting that Steven had failed to timely file the complaint in accordance with the statute of limitations governing the medical malpractice and wrongful death claims. In March 2000, Steven met with Mr. Gruhin and John Vanik ("Vanik"), from the law firm Ochs Vanik, at the offices of Gruhin Gruhin, to discuss this summary judgment motion. At this meeting, Steven elected to continue legal representation of this matter with Gruhin 
Gruhin, and to have the law firm of Ochs Vanik serve as co-counsel. At this time, Steven executed a new contingency fee agreement with Gruhin Gruhin, with Ochs Vanik specified as co-counsel.
 {¶ 6} On March 7, 2001, the trial court granted the physicians' motions for summary judgment, and concluded that the medical malpractice and wrongful death claims were barred by the respective statutes of limitations. Steven appealed to this Court, pursuant to which we affirmed the trial court's grant of the motions for summary judgment. Koerber v. Cuyahoga Falls Gen.Hosp., 9th Dist. No. 20516, 2001-Ohio-1365. Thereafter, Steven appealed from this decision to the Supreme Court of Ohio, which denied certiorari on January 16, 2002.
 {¶ 7} On March 12, 2002, the Koerbers filed a pro se complaint against Levey Gruhin, Mr. Levey, and Mr. Dombek. In the complaint, the Koerbers asserted a legal malpractice claim based upon the underlying medical malpractice and wrongful death claims.
 {¶ 8} On June 20, 2003, Levey Gruhin filed a motion for summary judgment, asserting that the Koerbers' legal malpractice claim was time-barred by the one-year statute of limitations prescribed by R.C. 2305.11(A). Specifically, Levey Gruhin contended that three cognizable events, which they argued triggered the statute of limitations, all occurred more than one year prior to the Koerbers' complaint filing date. On July 3, 2003, the Koerbers filed a motion for summary judgment against Levey Gruhin. On July 7, 2003, Mr. Levey and Mr. Dombek filed a joint motion for summary judgment.
 {¶ 9} In a decision dated August 13, 2003, the trial court granted the separate summary judgment motions of Mr. Levey, Mr. Dombek, and Levey Gruhin, finding that the complaint was not timely filed per the statute of limitations period prescribed in R.C. 2503.11(A). Particularly, the court stated that it
"finds that reasonable minds could come to but one conclusion that the cognizable event which should have, and did, place [the Koerbers] on notice of their need to pursue their possible remedies * * * was the filing of the [c]ourt's [o]rder * * * wherein the [c]ourt granted the [p]hysicians' [m]otion for [s]ummary [j]udgment in the underlying medical malpractice case."
 {¶ 10} In its order, the court provided the following reasoning:
"[T]he [c]ourt finds that there were several `cognizable events,' whereby [the Koerbers] should have discovered that their injuries were related to the acts or non-acts of Levey Gruhin and [Mr.] Levey and [Mr.] Dombek. First[,] Gruhin and Vanik consulted with [the Koerbers] on March 29, 2000 to advise them that the [p]hysicians in the underlying medical malpractice case had moved the [c]ourt for [s]ummary [j]udgment on the grounds that the action had been filed beyond the statute of limitations. * * * Second[,] Vanik again advised [the Koerbers] on August 18, 2000 of his belief that the medical malpractice claim was filed beyond the statute of limitations, and that [the Koerbers] should consult counsel to pursue a legal malpractice claim in that regard. * * * Finally, * * * [o]n March 7, 2001, the [c]ourt granted the [p]hysicians' [m]otion for [s]ummary [j]udgment for the reason that the claims were time-barred by the statute of limitations. * * * Nevertheless, the legal malpractice [c]omplaint was not filed until a week after the statute tolled."
 {¶ 11} The trial court further noted that pursuant to this conclusion, it was not necessary to consider the remaining pending motions, and explicitly stated that "there [wa]s no just cause for delay[,]" in accordance with Civ.R. 54(B) requirements. This appeal followed.
 {¶ 12} The Koerbers timely appealed, asserting two assignments of error for review. Levey Gruhin filed a timely cross-appeal,[1] asserting two cross-assignments of error for review.[2] We address the Koerbers' first and second assignments of error together, to facilitate review.
 II. A. First Assignment of Error
"The trial court erred in granting summary judgment in favor of defendants-appellees by failing to apply the `termination rule' or the `doctrine of continuous representation' to calculate the limitations period for the filing of plaintiffs-appellants' legal malpractice claims."
 Second Assignment of Error
"The trial court erred in granting summary judgment in favor of defendants-appellees through an erroneous application of the `cognizable event' rule."
 {¶ 13} In their first and second assignments of error, the Koerbers contend that the trial court erred in granting summary judgment in favor of Levey Gruhin, Mr. Levey, and Mr. Dombek, asserting that the court failed to properly apply the appropriate rules governing the statute of limitations with respect to a legal malpractice claim. We disagree.
 {¶ 14} An appellate court reviews a trial court's granting of summary judgment de novo, applying the same standard used by the trial court. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105; Klingshirn v. Westview Concrete Corp. (1996),113 Ohio App.3d 178, 180. Any doubt is to be resolved in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12. Pursuant to Civ.R. 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the non-moving party's claims. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of the motion. Id.
 {¶ 15} Once this burden is satisfied, the non-moving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id. The non-moving party may not rest upon the mere allegations and denials in the pleadings, but must instead point to or submit some evidentiary material that shows that a genuine dispute over the material facts exists. Id. See, also, Henkle v. Henkle (1991),75 Ohio App.3d 732, 735. In its review of a granting of summary judgment, an appellate court "review[s] the same evidentiary materials that were properly before the trial court at the time it ruled on the summary judgment motion." Am. Energy Servs., Inc. v. Lekan
(1992), 75 Ohio App.3d 205, 208.
 {¶ 16} In the instant case, Levey Gruhin, Mr. Levey, and Mr. Dombek argue that the Koerbers failed to file a timely complaint. R.C. 2305.11(A) provides that "an action for malpractice * * * shall be commenced within one year after the cause of action accrued[.]" Under R.C. 2305.11(A), a legal malpractice claim accrues, and the statute of limitations begins to run, when the later of the following events occurs:
"[(1)] [A] cognizable event whereby the client discovers or [in the exercise of reasonable diligence] should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney[,] or [(2)] when the attorney-client relationship for that particular transaction or undertaking terminates[.]" Scovern v. Farris, (Feb. 21, 1996), 9th Dist. No. 17352, quoting Zimmie v. Calfee, Halter Griswold (1989),43 Ohio St.3d 54, syllabus.
 {¶ 17} In Omni-Food Fashion, Inc. v. Smith (1988),38 Ohio St.3d 385, paragraph two of the syllabus, the Supreme Court of Ohio, in addition to adopting the above-quoted test, directed courts to also assess the particular facts of a legal malpractice claim and make the following determinations regarding the accrual date for such a claim:
"(1) [W]hen the injured party became aware, or should have become aware, of the extent and seriousness of [the] alleged legal problem; (2) whether the injured party was aware, or should have been aware, that the alleged injury was related to a specific legal transaction or undertaking previously rendered to [the party]; and (3) whether the alleged injury would put a reasonable person on notice of the need for further inquiry as to the cause of [the] injury."
 {¶ 18} In addition, the Supreme Court has made it clear, that, in an assessment of the actual occurrence and date of a cognizable event, an objective reasonable person standard of review, and not a subjective standard, is to be employed.Scovern, supra, citing Zimmie, 43 Ohio St.3d at syllabus. This test provides that "`it is enough that some noteworthy event, the cognizable event, has occurred which does or should alert a reasonable person that improper legal work has taken place." (Internal edits omitted.) Scovern, supra, quotingZimmie, 43 Ohio St.3d at 58.
 {¶ 19} Under the second portion of this test, the termination rule or the "continuous representation doctrine," the statute of limitations in a legal malpractice case is tolled while legal representation continues with respect to a particular undertaking or transaction. Murphy v. Hyatt Legal Servs. (Dec. 1, 1993), 9th Dist. No. 16194, citing Omni-Food, 38 Ohio St.3d at 387. An attorney-client relationship is consensual in nature, and the actions of either party to the relationship can affect its continuance. Brown v. Johnstone (1982), 5 Ohio App.3d 165, 167. This Court has stated that "conduct which dissolves the essential mutual confidence between attorney and client signals the termination of the professional relationship." Id. at 166. InMastran v. Marks (Mar. 28, 1990), 9th Dist. No. 14270, this Court, referring to our holding in Brown, explained this previous holding, stating that
"the termination of the attorney-client relationship depends * * * on conduct, an affirmative act by either the attorney or the client that signals the end of the relationship. For a trial court to grant summary judgment on this basis, such an act must be clear and unambiguous, so that reasonable minds can come to but one conclusion from it. [Where] an act can be reasonably viewed as other than a clear, unambiguous signal that the attorney-client relationship is at an end, summary judgment is improper."
 {¶ 20} In support of their first assignment of error, the Koerbers argue, relying on the continuous representation doctrine, that the statute of limitations for their legal malpractice claim was tolled and did not begin to run until January 16, 2002, when the Supreme Court of Ohio denied certiorari in the Koerbers' appeal from the underlying medical malpractice and wrongful death case. The Koerbers argue that their attorney-client relationship with Levey Gruhin, Mr. Levey, and Mr. Dombek did not terminate until the Supreme Court denied certiorari, because it was only at that point that the litigation in the underlying medical malpractice and wrongful death case ended. The Koerbers further argue that "[t]he trial court's determination of the `cognizable events' in this case is irrelevant inasmuch as [the Koerbers'] relationship with Levey 
Gruhin did not terminate" until the Supreme Court's denial of certiorari. We now apply the applicable law to the facts of this case.
1. Termination of the Attorney-Client Relationship
 {¶ 21} We find that the evidence in the record counters the Koerbers' view regarding the termination date of the attorney-client relationship. In his affidavit, Gruhin stated that on January 15, 2000, Gruhin Gruhin mailed a contingency fee agreement signed by the firm to Steven, who signed and returned this agreement to the firm on or about January 24, 2000. A copy of this contingency fee agreement, which was introduced as an exhibit during Steven's deposition, was signed by Gruhin 
Gruhin on January 15, 2000, and exhibits Steven's undated signature. More importantly, the agreement expressly states, towards the top of the document in bolded, capitalized letters, the name of the new law firm, Gruhin Gruhin.
 {¶ 22} Furthermore, Steven's own deposition testimony reveals that he was aware of the fact that the legal representation in the medical malpractice and wrongful death case had changed hands. Specifically, Steven stated during the deposition that he first learned of Levey Gruhin's dissolution when he received a letter in the mail notifying him of this fact. Steven additionally stated that pursuant to this letter, he went to the office of Gruhin Gruhin, where he and the attorneys at the firm had a discussion regarding Levey Gruhin's dissolution.
 {¶ 23} The Koerbers also assert in their brief on appeal, that when Steven signed the contingency agreement with Gruhin 
Gruhin on January 15, 2000, he believed that he was still remaining with the firm of Levey Gruhin; they argue that "[i]t was immaterial to [him] whether the name of the firm was Levey 
Gruhin or Gruhin Gruhin. In his mind, it was still the same firm he had hired." However, during his deposition testimony, Steven explained that Gruhin Gruhin established their firm in the same office that once contained Levey Gruhin; and since the Koerbers' files and records were physically at this location, Steven stated that he preferred to "stay with the firm where it was at." Steven also asserted that he did not seek out Mr. Levey's legal advice after he signed the agreement with Gruhin 
Gruhin. He further asserted that he had understood, at the time that he signed the contingency fee agreement, that Mr. Levey was no longer involved in the case, and that he understood the distinction between the firms Gruhin Gruhin and Levey Gruhin.
 {¶ 24} On March 29, 2000, Steven signed a second agreement with Gruhin Gruhin that added the firm Ochs and Vanik as co-counsel for the case, a copy of which was also introduced during Steven's deposition. When asked whether he understood that with the addition of Ochs and Vanik that Mr. Dombek would no longer be working on the case, Steven replied that he could see "that Ochs Vanik must have took [sic.] over then."[3]
Additionally, Gruhin stated that he informed the Koerbers in March 2000 that Mr. Dombek's employment with Gruhin Gruhin was going to be terminated, and that as of March 29, 2000, Mr. Dombek would no longer be handling their case.
 {¶ 25} In his affidavit, Mr. Dombek states that after Levey 
Gruhin dissolved in December 1999, he was employed with Gruhin 
Gruhin for several weeks, and that the new firm had assumed the responsibilities for the Koerbers' case. Mr. Dombek further stated that sometime at the end of March 2000, he ceased employment with Gruhin Gruhin and ceased working as the attorney of record on the Koerbers' case, and that he had no further involvement with that case after that point. However, there is evidence in the record that Mr. Dombek's last official day with Gruhin Gruhin was April 10, 2000.
 {¶ 26} Mr. Levey stated at his deposition that in August 1999, he separated himself from involvement in most of the cases he had taken on while as partner with Levey Gruhin. Furthermore, he stated that after Levey Gruhin dissolved in December 1999, Gruhin Gruhin took over all the files of Levey 
Gruhin, per agreement.
 {¶ 27} The Koerbers argue that the statute of limitations did not expire until the denial of certiorari in January 16, 2002, because Gruhin "continued" to represent them until that time. The Koerbers appear to contend that Gruhin represented them from the start of the relationship in 1997, and that his purported "continued representation" until denial of certiorari in 2002 was simply a continuance of the same attorney-client relationship. However, such an argument presupposes that the Koerbers had formed an attorney-client relationship with Gruhin, and the Koerbers do not represent sufficient evidence to establish that they had done so. Particularly, they do not present any evidence that indicates that Gruhin personally had advised them on any legal matters or invoked their trust prior to the Koerbers' signing of the Gruhin Gruhin contingency agreement. See, e.g.,Riley v. Clark (Nov. 10, 1999), 4th Dist. No. 98CA2629;Brubaker v. Shafran, Zapka Leuchtag (Dec. 14, 2000), 8th Dist. No. 77949. See Landis v. Hunt (1992), 80 Ohio App.3d 662,669. Nor do the Koerbers present any evidence showing that they paid Gruhin individually. See, e.g., Riley, supra. See, also,Landis, 80 Ohio App.3d at 669.
 {¶ 28} It is clear in this case, that Mr. Levey's representation of the Koerbers, on behalf of Levey Gruhin, terminated as early as January 2000 and no later than March 2000, and that Mr. Dombek's relationship with the Koerbers' terminated no later than April 10, 2000. To conclude that both Mr. Levey and Mr. Dombek's representation of the Koerbers continued for almost an additional two years, especially given the unambiguous evidence that Steven signed a new contingency fee agreement with the newly formed firm of Gruhin Gruhin and Ochs Vanik as new co-counsel, is nonsensical.
 {¶ 29} Additionally, Levey Gruhin's potential liability with respect to the Koerbers' legal malpractice claim terminated the date that Steven signed the contingency fee agreement with Gruhin Gruhin in January 2000, as Gruhin Gruhin, a new law firm partnership, undertook the legal representation of the Koerbers' medical malpractice and wrongful death case. Therefore, the application of the applicable law to the facts of this case necessarily results in a conclusion that the legal relationship between the Koerbers and Levey Gruhin, Mr. Levey, and Mr. Dombek could not have continued until the date of the Supreme Court's denial of certiorari on January 16, 2002.
 {¶ 30} Based upon the foregoing, we cannot conclude that it was not sufficiently and unambiguously communicated to Steven that he was engaging the legal services of a new law firm, aswell as new attorneys, with respect to the underlying claim. We find that reasonable minds cannot differ as to whether Mr. Levey and Mr. Dombek continued to represent the Koerbers with respect to the medical malpractice and wrongful death claim after Steven signed a new contingency fee agreement with Gruhin Gruhin. The relationship between the Koerbers and Levey Gruhin and Mr. Levey could not have terminated later than March 2000. Additionally, reasonable minds can come but to one conclusion regarding Mr. Dombek, that the termination of the relationship between the Koerbers and Mr. Dombek ended no later than April 10, 2000.
 {¶ 31} However, our inquiry as to the accrual date in this legal malpractice claim does not end here; the parties also raise certain dates that they argue qualify as "cognizable events" with respect to Levey Gruhin, Mr. Levey, and Mr. Dombek. Therefore, we must assess these events in order determine whether the cognizable event, if one exists, falls after the dates of termination ascertained above. See Scovern, supra, quotingZimmie, 43 Ohio St.3d at syllabus.
2. Cognizable Events
 {¶ 32} During his deposition, Steven also spoke to the issue of when he was notified by various attorneys of the legal mistakes that were made in the medical malpractice and wrongful death case. Steven stated that the firm of Ochs Vanik informed him, after they signed on as co-counsel in the Koerbers' case, that "there was no more they could do because there were problems with this case[.]" He also stated that "Ochs Vanik * * * tried to survive the case any way they could from the screw-ups that were done before[,]" but that he was aware that at some point before Gruhin Gruhin and Ochs Vanik were hired as co-counsel, that someone "blew the statute of limitations."
 {¶ 33} In his affidavit, Gruhin stated that on March 29, 2000, he personally informed the Koerbers of the statute of limitations problem, and that he believed Mr. Levey had failed to timely file the case. Gruhin also asserted that he informed the Koerbers that "it was likely that their claim would be dismissed, by the court[,]" but that "Gruhin Gruhin would try to remedy the problem." In addition, Gruhin stated that he "advised [the Koerbers] that they could seek new counsel for the purpose of filing a claim for legal malpractice and/or for the purpose of filing a Grievance with the Bar Association."
 {¶ 34} During his deposition, Vanik stated that he first met with Steven at the end of March 2000. Vanik stated that he had explained to Steven that problems existed with the case, and specifically that there were problems with the timely filing of the case. He stated that he specifically discussed with Steven the basis behind the summary judgment motion filed by the physicians in the medical malpractice and wrongful death case, that the motion argued that the claims were barred by the statute of limitations. Additionally, Vanik stated that on August 18, 2000, he discussed with Steven
"the possibility of them exploring a legal malpractice claim[,]" and that "if it was determined that that was untimely filed, then * * * they would have an additional potential action, but that I don't do legal malpractice, that I don't know whether this conversation starts time running, whether the time would start running from the trial court or a Court of Appeals decision, but it would be in their best interest to at least pursue seeking out an attorney to determine whether or not they have any rights to pursue."
 {¶ 35} Applying the applicable reasonable person standard articulated in Zimmie to the facts of this particular case, we find that a reasonable person should have become aware, as early as March 29, 2000, or in the alternative no later than August 18, 2000, that "improper legal work" had occurred in this case, and that reasonable notice was given on this date of the need to further investigate and pursue possible legal malpractice remedies. See Scovern, supra. Therefore, either of these first two dates would satisfy the Zimmie test.
 {¶ 36} We do note that this Court has in the past stated that "[w]e decline to restrict the discovery of a legal injury * * * to the time when the injured party * * * is advised of thespecific legal nature of his injury and its possible remedies[,]" (Emphasis added.) which arguably makes an inquiry into the date that the trial court issued its judgment on the summary judgment motions ultimately unnecessary. Mastran v.Marks (Mar. 28, 1990), 9th Dist. No. 14270. See Scovern,
supra, citing Zimmie, 43 Ohio St.3d at 58. However, we also conclude that a reasonable person should have become aware of the seriousness of the legal injury in this case no later than March 7, 2001, the date the trial court entered its judgment on the summary judgment motions.
 {¶ 37} The Koerbers also attempt to postpone the accrual of the legal malpractice action with the argument that they did not receive actual notice of the trial court's decision granting summary judgment in favor of the physicians until sometime in April 2001 when Gruhin Gruhin and Ochs Vanik informed them of this fact; and that therefore the statute of limitations did not begin to run until sometime in April 2001. Initially, we observe that it does not appear that the Koerbers raised this particular argument before the trial court. As such, the Koerbers raise this argument for the first time on appeal. Generally, issues that are not raised in the trial court cannot be raised for the first time on appeal. Holman v. Grandview Hosp. Med. Ctr. (1987),37 Ohio App.3d 151, 157. See, also, Schade v. Carnegie Body Co.
(1982), 70 Ohio St.2d 207, 210.
 {¶ 38} Furthermore, the Koerbers' argument is unpersuasive. There exists no rule or provision in Ohio that requires a party to be given actual notice of the filing of a judgment entry.Heiland v. Marfori (Mar. 20, 1985), 9th Dist. No. 3667, citingAmericare Corp. v. Misenko (1984), 10 Ohio St.3d 132, 133;Cuyahoga Dunham Supply Co. v. Kus-Tom Builders, Inc. (Apr. 12, 1979), 8th Dist. No. 38608, citing Town Country Drive-InShopping Ctrs., Inc. v. Abraham (1975), 46 Ohio App.2d 262, 265. Furthermore, an attorney's knowledge of proceedings and the notice of a judgment are imputed to a party. Cuyahoga Dunham,
supra. See, also, G.T.E. Automatic Elec., Inc. v. ARCIndustries, Inc. (1976), 47 Ohio St.2d 146, 152; Schultz Trustv. Strachan (June 2, 1994), 8th Dist. No. 66550, citing Raiblev. Raydel (1954), 162 Ohio St. 25, 29-30; State v. Hysell
(Sept. 27, 1995), 4th Dist. No. 95 CA 4.
 {¶ 39} In the instant case, the Koerbers were represented by an attorney throughout the litigation of the medical malpractice and wrongful death claims; the Koerbers do not contest their attorney's receipt of notice of this judgment. Furthermore, the only evidence the Koerbers offered in support of this argument is Steven's deposition testimony, which indicates that he could not even recall the exact date that he received this notice; nor does the record show that the Koerbers otherwise demonstrated to the trial court when he actually received such notice.
 {¶ 40} The Koerbers also argue that the trial court improperly engaged in fact finding with respect to the determination of the cognizable event in this case. Specifically, the Koerbers contend that a genuine issue of material fact remains as to whether they were put on notice of the legal injury in this case. However, as we have already concluded, the evidence clearly indicates that Steven was definitely put on notice of this legal issue, on several occasions. The Koerbers do not contest that either of these conversations with Gruhin or Vanik actually occurred, and the evidence in the record substantiates that these events and conversations in fact occurred.
 {¶ 41} Most significantly, further inquiry into the exact date is ultimately irrelevant, because the Koerbers' complaint for legal malpractice nevertheless does not fall within the statute of limitations. Notwithstanding the possibility that either March 29, 2000, or August 18, 2000 could qualify as the actual cognizable event in question, and even accepting, for the sake of argument, the latest possible date of March 7, 2001 as the date of the cognizable event, the statute of limitations would begin to accrue in our scenario no later than March 7, 2001. Since the complaint was filed on March 14, 2002, the Koerbers' legal malpractice claim against Levey Gruhin, Mr. Levey, and Mr. Dombek, was not filed within the one-year statute of limitations. See R.C. 2305.11(A). As such, the Koerbers' legal malpractice claim against Levey Gruhin, Mr. Levey, and Mr. Dombek in this case is ultimately time-barred.
 {¶ 42} Viewing the evidence most strongly in favor of the Koerbers, we conclude that Levey Gruhin, Mr. Levey, and Mr. Dombeck were entitled to judgment as a matter of law. SeeTemple, 50 Ohio St.2d at 327. Thus, this Court finds that the trial court did not err when it granted summary judgment in favor of Levey Gruhin, Mr. Levey, and Mr. Dombek and when it dismissed the legal malpractice claims against them due to the expiration of the statute of limitations. See Scovern, supra;Bryson v. Powers (Dec. 8, 1993), 9th Dist. No. 16175 (stating that the disposal of a legal malpractice cause of action through summary judgment, based on the statute of limitations, is proper).
 {¶ 43} Accordingly, the Koerbers' first and second assignments of error are overruled.
 B. First Cross-Assignment of Error
"The trial court erred in granting appellants/cross-appellees' motion to incorporate the deposition transcript of Dr. Botham."
 Second Cross-Assignment of Error
"The trial court erred in denying levey Gruhin's motion in limine to preclude appellants/cross-appelees from introducing expert testmony on issues other than the standard of care in legal malpractice actions."
 {¶ 44} In their first and second cross-assignments of error, Levey Gruhin assert that the trial court erred when it granted the Koerbers' motion to incorporate the deposition transcript of an expert witness taken during a prior case, and when it denied Levey Gruhin's motion in limine to exclude certain expert testimony in the legal malpractice case.
 {¶ 45} Due to our determination with respect to the Koerbers' first and second assignments of error, that the trial court did not err when it granted summary judgment in favor of Levey 
Gruhin, Mr. Levey, and Mr. Dombek, we need not address Levey 
Gruhin's first and second cross-assignments of error, as these issues are now rendered moot due to the proper disposition of the case at the trial court level. See App.R. 12(A)(1)(c).
 III. {¶ 46} The Koerbers' first and second assignments of error are overruled. Levey Gruhin's first and second cross-assignments of error are not addressed. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellants/Cross-Appellees.
Exceptions.
Slaby, J., concurs.
[1] On October 9, 2003, this Court dismissed Levey Gruhin's cross-appeal in this case, stating that we lacked jurisdiction over the cross-appeal. Thereafter, Levey Gruhin filed a motion to reconsider the October 9, 2003 order, arguing that they had not received timely service of the trial court's entry per Civ.R. 58(B). On November 5, 2003, this Court issued a journal entry that granted Levey Gruhin's motion for reconsideration and reinstated their cross-appeal.
[2] On June 4, 2004, the Koerbers filed a motion to strike the notice of supplemental authority previously filed by Levey 
Gruhin. The motion to strike is denied.
[3] John Vanik from the firm of Ochs Vanik stated during his deposition that after Levey Gruhin dissolved in December 1999, Ochs Vanik became co-counsel on many of the litigation files being handled at the time of Levey Gruhin's dissolution.